EUGENE O'CONNOR, RESPONDENT, v. WILLIAM C. JONES,. APPELLANT.

*Order of arrest — sufficiency of the affidavit — what constitutes a conversion — what is a diversion — rescission.*

The affidavit upon which an order of arrest was granted in a civil action stated that Eugene O'Connor, who carried on business under the name of George A. Leavitt & Co., made three promissory notes to his own order to the amount of $2,000, at four months, and indorsed and delivered them on or about August 28, 1890, to one Jones, under a written agreement by which Jones agreed to have the notes discounted and pay to George A. Leavitt & Co. one-half the proceeds, and when the notes matured pay one-half their amount; that Jones further agreed, by said instrument, to deposit a certain certificate of indebtedness to secure payment by him of one-half of the notes, which certificate should be sold in case of his default; and, finally, that if Jones was not able to use the notes he would return them to George A. Leavitt & Co. on September 15, 1890.

The affidavit then stated that Jones had paid O'Connor only $400; had refused to return the notes or inform O'Connor what he had done with them, and that O'Connor's earliest knowledge upon this point was when he was sued upon the notes by alleged *bona fide* holders thereof.

It was also alleged that the stock certificate was worthless.

*Held*, that a conversion of the notes was not made out.

That, in the absence of any proof, the court would assume that the notes were disposed of before September 15, 1890, and that they were discounted by the persons suing O'Connor.

That while O'Connor might have a remedy against Jones for the sum, in excess of $400, which O'Connor was entitled to upon the notes, it could not be said that there was a wrongful conversion of the notes themselves.

That the agreement contemplated a joint interest and a discount for mutual benefit, and that a case of wrongful diversion was not shown.

That as O'Connor had received $400 from Jones, and had not, upon his demand for the notes, offered to return the money, the order of arrest could not be maintained.

Appeal by the defendant William C. Jones from an order of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 28th day of April, 1892, denying defendant's motion to vacate an order of arrest. ·

The action was brought to recover the damages resulting from an alleged conversion of certain notes made by Eugene O'Connor, who did business and signed such notes under the name of Geo. A. Leavitt & Co.

*George A. Stearns,* for the appellant.

*Robert A. B. Dayton,* for the respondent.

O'Brien, J.:

The ground of arrest was the wrongful conversion by the defendant of personal property consisting of three promissory notes. The motion to vacate was made upon the papers on which the order of arrest was granted. It, therefore, becomes necessary to refer somewhat at length to plaintiff's affidavit which was used in procuring the arrest of the defendant. It therein appears that on the 28th of August, 1890, plaintiff made his three promissory notes, amounting in the aggregate to $2,000, payable to his own order, which he indorsed and delivered to defendant under an agreement in writing as follows: .

"New York, *August* 28th, 1890.

"Received from Geo. A. Leavitt & Co. their notes, August 15th, $692.20, at 4 months; August 21st, $714.71, at 4 months, and August 25th, $593.09, at 4 months, to their order, and payable at 787 Broadway, which notes I am to have discounted and pay over to Geo. A. Leavitt & Co. one-half of the proceeds; and when said notes mature I agree to pay one-half the amount of said notes, and Geo. A. Leavitt & Co. are to pay the other half. I also agree to deposit with them one thousand dollars par value of the certificates of indebtedness of the West Florida & Alabama R. R. Co. to secure

the payment of my half of said proceeds.   In case of failure on my part to pay my half of said notes when they mature, the certificates are to be sold and the proceeds applied to the payment thereof, and I agree to make good the difference.   Should I not be able to use these notes, I agree to return them on September 15th to Geo. A. Leavitt & Co.

"WM. C. JONES.

"NEIL MCCALLUM, *Witness.*"

The affidavit then avers that the notes were not sold to the defendant or delivered to him for any other purpose than that expressed in the receipt or agreement referred to ; that the defendant paid to plaintiff the sum of $400, and no more, on account of the notes ; that although a demand was made for the return of the notes, such demand was refused, coupled with a like refusal to inform plaintiff what had been done with them ; that defendant " wrongfully converted and disposed of them to his own use ; " that plaintiff was unable to ascertain who held the notes until they became due, when one was presented to plaintiff for payment by one Bridgman, and the other two notes by one Aschoff, both of whom commenced suit in the City Court against plaintiff, alleging that the notes had been delivered to them respectively for value before maturity and that such actions are still pending.

With the exception of a statement as to the certificate of indebtedness, mentioned in the receipt, being worthless, we have given all the material statements contained in the affidavit upon which the order to arrest the defendant was granted.   The question is thus presented, whether these facts are sufficient to justify a conclusion that the defendant wrongfully converted and disposed of the notes.

It is undoubted law that a person who diverts an accommodation note from the purpose for which it was intended is guilty of a conversion of the note.   It will not, however, be presumed that one who lawfully obtains possession of promissory notes has converted the same ; and to justify an arrest, the facts stated must warrant a conclusion, in order to constitute a conversion, that the notes were wrongfully or unlawfully diverted.

The receipt given by the defendant shows under what agreement he took the notes.   He was to have them discounted, pay over one-half the proceeds to plaintiff and pay one-half of the notes

when they became due ; and, as security for the payment of his half of the proceeds, the defendant deposited with plaintiff $1,000, par value, of the certificates of indebtedness of the West Florida and Alabama Railroad Company. This receipt further provided that upon the failure of the defendant to pay his half, these certificates were to be sold and the proceeds applied to the payment, and the defendant was to pay the difference. A further provision was that unless the defendant was able to use the notes he was to return them on September fifteenth to the plaintiff.

It will be noticed that there is no statement that the notes were not used before the fifteenth of September, or that after that time, while the notes were still in defendant's possession, a demand for their return was made. Under the rule which requires us to assume the innocence rather than the guilt of a party, and an honest rather than a fraudulent intent, we must assume, in the absence of a statement to the contrary, that the disposition of the notes was made some time prior to September fifteenth.

Assuming, therefore, that some disposition was made of them by the defendant prior to the fifteenth, the other question remains, whether the notes were diverted by the defendant from the purpose for which they were given. Plaintiff does not state that they were not discounted ; the statement is that third parties, claiming to be the holders of the notes for value before maturity, had commenced suit thereon. This again is entirely consistent with the view that they may have discounted these notes for the defendant. The conversion, therefore, in this case, if conversion it can be called, must be predicated upon the fact of the failure, after having the notes discounted, to return one-half of the proceeds to the plaintiff. Such failure may be a breach of trust or some other wrongful act on the part of the defendant, but we fail to see how, from that circumstance, the conclusion can be deduced that there was a wrongful conversion of the promissory notes themselves. The plaintiff received, presumably from the use made of the notes, $400 ; and the difference between that amount and the one-half of what would have been realized by discounting the notes correctly represents the interest the plaintiff would have had in the proceeds, and for which, undoubtedly, an action in some other form than one for conversion of the notes would lie in plaintiff's favor. Having regard,

however, to the interest which defendant obtained in these notes under the agreement, by undertaking to procure their discount for the mutual benefit of both, his giving what was thought to be good security for the repayment of his half when the notes matured, and the intention of both parties that plaintiff should pay the notes at maturity, it would be going further than any of the reported cases to hold that the facts stated in the affidavit here made out a case of conversion.

Where a note is placed in another's possession for a definite and specific purpose, and any other use of it is made, it is a violation of trust, and it is this abuse of trust or breach of such lawful possession which constitutes a conversion. Where, however, one intrusts promissory notes to another, permitting him to negotiate or use the same for the purpose of raising money thereon for the joint benefit of both, the parties have a joint interest in the results or proceeds of the notes, and the arrangement between the parties contemplates that the maker of the notes is to look for the whole or a portion of the proceeds to the one to whom the notes were delivered. As was said in *Decker* v. *Matthews* (12 N. Y., 317), quoting from the charge of Judge Duer upon the trial: "Although these facts might entitle the plaintiff to recover the proceeds in a different form of action, they amounted to a waiver of the alleged fraud, upon which the present suit (for conversion) was founded." The case relied upon by plaintiff, of *Hines* v. *Patterson* (95 N. Y., 1), is not in point. There the notes, for the conversion of which the action was brought, were made by the plaintiff, and were delivered by him to the defendant's testator, under an agreement that they were to be discounted for the benefit of defendant's testator, and the proceeds, after deducting the per cent which was to be paid to plaintiff, were to be invested in certain real estate which was to be conveyed to the defendant's testator. The defendant's testator, instead of having the notes discounted and investing the proceeds in real estate, disposed of them in the purchase of personal property; and it was held that he was guilty of a conversion of the notes. The principle of this case follows the rule laid down in many others, that a diversion of a note from the purpose for which it was given will constitute a conversion. Here, if the defendant converted the notes, he did so at the time he parted with their possession, and it is

nowhere stated in the affidavit that he ever parted with them unlawfully. As already shown, it does not even appear at what date he parted with them.

Under the agreement, what plaintiff was really entitled to was one-half of the proceeds to be realized upon discounting the notes, and there is no statement in the affidavit that he ever demanded the half of such proceeds. Upon the facts appearing, we do not think a case of conversion is made out, but that the most that can be claimed is, that the defendant failed to pay to plaintiff something less than $600 which he was entitled to receive according to the agreement made respecting the use of the notes. If paid at maturity, he would have had a right against the defendant for contribution, which he could enforce by resort to the collateral or by a proper action, or both if necessary, to obtain the one-half of the notes which the defendant agreed to pay.

The statement in the affidavit that the defendant "refused to inform this deponent what he had done with them, and wrongfully converted and disposed of them to his own use" is the only statement that in any way charges or connects the defendant with the illegal or unlawful conversion of the notes, and the latter is a mere statement of a conclusion.

Apart, however, from the foregoing reasons, there is another which presents an insurmountable obstacle to maintaining the arrest. The plaintiff received from the defendant $400, and when he made a demand, as stated by him, for the return of the notes, there was no offer on his part to return the $400. It is clear that he could not obtain a return of the notes and hold the $400.

We are of opinion, therefore, that the affidavit was entirely insufficient, and that the order appealed from should be reversed, with ten dollars costs and disbursements, and the motion to vacate the order of arrest should be granted.

Van Brunt, P. J., concurred.

Order reversed, with ten dollars costs and disbursements, and the motion to vacate the order of arrest granted.